## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALISA MICHELLE STEVENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, | ) Civil Action No. 19-cv-11202-DJC |
| Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                      **September 30, 2020**

### I.     Introduction

Pursuant to the procedures set forth in § 205(g) of the Social Security Act and 42 U.S.C.

§ 405(g), Plaintiff Alisa Stevenson ("Stevenson") brings this action for judicial review of the final

decision of Andrew Saul, the Commissioner of the SSA ("Commissioner"),[1] issued by an

Administrative Law Judge ("ALJ") denying Stevenson's claim for disability benefits.  R. 17.[2]

Stevenson moves for this Court to reverse the Commissioner's decision or, alternatively, remand

for a further hearing.  D. 1 at 2.  For the reasons discussed below, this Court DENIES Stevenson's

motion to reverse or remand, D. 10, and ALLOWS the Commissioner's motion to affirm, D. 14.

---

[1] Andrew Saul is now the Commissioner of the Social Security Administration ("SSA") and is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] "R." refers to citations to the administrative record filed at D. 7.

## II.     Factual Background

From February 1986 until July 2004, Stevenson worked as a mutual fund account manager. R. 299.  She alleges that she suffers from a severe anxiety disorder, experiences panic attacks, and depression and agoraphobia.  D. 10 at 3.  She alleges that her condition worsened after undergoing brain surgery in 2004 to treat two brain aneurysms.  Id.  As a result, Stevenson alleges that she has been unable to work since August 4, 2004.  R. 82; R. 10 at 3.

## III.     Procedural Background

On November 6, 2015, R. 270-71,[3] Stevenson filed an application for Social Security benefits, asserting that she had been disabled beginning on August 4, 2004.  R. 270.  Stevenson's initial claim was denied by the SSA.  R. 114-116.  Stevenson moved to reconsider, but the SSA again denied her claim.  R. 117-20.

Stevenson requested a hearing before an ALJ on June 15, 2016.  R. 121-22.  After a May 16, 2017 hearing, the ALJ determined that Stevenson was disabled as of August 4, 2004, and approved Stevenson's claim for disability in a written decision on June 20, 2017.  R. 96-106.  At step one, the ALJ determined that Stevenson had not engaged in substantial gainful activity since August 4, 2004.  R. 102.  At step two, the ALJ determined that Stevenson was severely impaired by anxiety and agoraphobia.  Id.  These impairments were found to be severe within the meaning of 20 C.F.R. § 416.920(c) because they "impose more than a mere limitation on [Stevenson's] ability to perform basic work activities."  Id.  At the same step, the ALJ determined that Stevenson's previous aneurysm clipping was not a severe impairment because it did not cause Stevenson "more than a minimal work-related limitation."  Id.  At step three, the ALJ found that

---

[3] Petitioner identifies September 4, 2015 as the date of her filing, D. 10 at 3, but it appears her application was submitted on November 6, 2015, R. 270-71.

Stevenson did not have an "impairment or combination of impairments" that met or "medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.1520(d), 404.1525 and 404.1526)." Id. At step four, the ALJ determined that Stevenson had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but she would be "unable to maintain concentration, persistence, and pace over an eight-hour workday." R. 103. This would likely cause Stevenson to be off work tasks for twenty to thirty percent of the day and would likely result in Stevenson being absent from work three or more days a month. Id. Accordingly, the ALJ determined that Stevenson was unable to perform any of her past relevant work. R. 105. At step five, considering Stevenson's age, education, work experience and RFC, the ALJ concluded that there were no other work for which there are a significant number of jobs in the market, id., and concluded that she was disabled within the meaning of the Social Security Act. R. 106.

On July 24, 2017, the Appeals Council issued a notice that it planned to set aside the ALJ's decision and remand the case to the ALJ for further action and a new decision. R. 170. In the notice, the Council explained that after considering the written record before the ALJ, as well as the testimony given at the hearing, the ALJ's decision in favor of Stevenson was "not supported by substantial evidence and there [was] an error of law." R. 169. The Appeals Council explained three reasons for its decision. First, the Appeals Council noted that there was no objective medical evidence from an acceptable medical source to establish that Stevenson had a medically determinable impairment. R. 170. A medically determinable impairment must result from abnormalities that can be shown by "medically acceptable clinical and laboratory diagnostic techniques." R. 171. To establish a mental or physical impairment, "there must be objective medical evidence from an acceptable medical source." Id. The Appeals Council explained that

its rules had recently changed to include advanced practice registered nurses ("APRNs") as acceptable medical sources, but that this change applied to disability claims filed on or after March 27, 2017, not Stevenson's claim filed in 2015. <u>Id.</u> Thus, the records provided by Donna Principato ("Principato"), an APRN and clinical nurse specialist ("CNS") who had been treating Stevenson for the relevant conditions, were not considered acceptable medical evidence. <u>Id.</u> Because the record did not contain evidence from an acceptable medical source for the relevant period before Stevenson's last date insured (December 31, 2009), the Council found that the ALJ's finding of a severe impairment at step two reflected an error of law. <u>Id.</u>

Second, the Appeals Council determined that there was a lack of evidence from the period on or before Stevenson's date last date insured to support the ALJ's determination of Stevenson's RFC. <u>Id.</u> Specifically, there were no relevant medical records from Stevenson's primary care physician ("PCP") during this period and no reference to or records from the healthcare professional who prescribed Stevenson the psychotropic medications that Principato referenced in her records. <u>Id.</u> Third, the Appeals Council noted that an onset date should be set "on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from working for a continuous period of at least 12 months." <u>Id.</u> The Appeals Council determined that the ALJ's decision did not provide adequate rationale for ALJ's determination of how Stevenson's limitations related to the period on or before Stevenson's last date insured. <u>Id.</u>

The Appeals Council noted that "absent the receipt of new and material evidence or persuasive legal argument," it intended to remand the case to the ALJ with specific instructions. D. 172. On October 19, 2017, the Appeals Council remanded the case to the ALJ. In its order

doing so, the Appeals Council reiterated its reasons for the remand and, consistent with its earlier

notice, directed that on remand the ALJ would:

> [o]btain additional evidence concerning the claimant's impairments in order to reevaluate the nature and severity of any alleged impairments on or before the date last insured . . . .
>
> [o]btain testimony from a medical expert, preferably from a psychiatrist or psychologist, to clarify the nature, severity, limiting effects of the claimant's impairments on or before December 31, 2009, including whether the claimant has an impairment or combination of impairments that meets or medically equals a listed impairment . . . .
>
> [i]f warranted, re-evaluate the claimant's maximum [RFC] during the entire period at issue and provide rationale with specific references to the evidence of record in support of assessed limitations on a function-by-function basis . . . .  In so doing, further evaluate the medical and other opinions of record in accordance with 20 CFR 404.1527 explaining the reasons for the weight given to the opinions.
>
> [i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to assist in determining whether the claimant can make an adjustment to other work existing in significant numbers in the national economy. . . .  The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. . . .

D. 111.

On September 4, 2018, after the remand hearing, the ALJ reversed his prior decision and

found that Stevenson was not disabled within the meaning of  the Social Security Act.  R. 9-17.

In compliance with the Appeal Council's instructions, the ALJ reevaluated the nature and severity

of Stevenson's alleged impairments, finding that because Stevenson's treatment history for her

alleged impairments was exclusively with Principato, there was no acceptable medical evidence

to establish the alleged medical impairment as a medically determinable impairment.  R. 16.  The

ALJ, however, did not obtain testimony from a medical expert regarding the nature and severity

of Stevenson's impairments, reasoning that doing so "could not supply the signs or laboratory

findings necessary to establish a medically determinable impairment on or before December 31, 2009," [last date insured]. R. 17.

Stevenson requested review of the ALJ's decision, R. 269, which the Appeals Council denied on May 8, 2019, affirming the ALJ's decision as the final decision of the Commissioner in this matter.  R. .

## IV. Discussion

### A. Legal Standards

#### 1. *Entitlement to Disability Benefits*

A claimant's entitlement to supplemental security income ("SSI") turns in part on whether a claimant has a "disability," defined in the Social Security context as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. § 404.1505; 42 U.S.C. §§ 416(i), 423(d)(1)(A). The inability must be severe, rendering the claimant unable to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(2); 20 CFR §§ 404.1505-404.1511.

The Commissioner must follow a five-step sequential evaluation process to determine whether an individual has a disability for Social Security purposes and, thus, whether that individual's application for benefits should be granted.   20 C.F.R. § 404.1520(a).   The determination may be concluded at any step along the process.  Id.  First, if the applicant is engaged in substantial gainful work activity, then the application is denied.  Id.  Second, if the applicant does not have, or has not had within the relevant timeframe, a severe impairment or combination of impairments, then the application is denied.  Id.  Third, if the impairment meets the conditions

for one of the "listed" impairments in the Social Security regulations, then the application is granted.  Id.  Fourth, if the applicant's RFC is such that the applicant can still perform past relevant work, then the application is denied.  Id.  Fifth and finally, if the applicant, given his or her RFC, education, work experience and age, is unable to do any other work for which there are a significant number of jobs in the market, he or she  considered disabled and the application is granted.  Id.

2.    *Standard of Review*

This Court has the power to affirm, modify or reverse a decision of the Commissioner upon review of the pleadings and record.  42 U.S.C. § 405(g).  Such review, however, is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)).  The ALJ's findings of fact are conclusive when supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

**B.    Before the ALJ**

1.    *Medical History Presented to the ALJ*

Stevenson's medical record presented to the ALJ for the initial hearing reflects a diagnosis of a panic disorder and agoraphobia, treatment for a past cerebral aneurysm and a familial history of mental disorders.  Stevenson has a family history of panic disorder and agoraphobia—her father was diagnosed as having a panic disorder with agoraphobia and her mother and brother both suffer from severe anxiety.  R. 404.  A report completed by Principato, an APRN and CNS, on November 25, 2015 noted that despite Stevenson's diagnoses, her mental status was alert and oriented, her

speech was clear and her memory, though "recent and remote," was intact.  R. 401.  The report also noted that Stevenson's concentration and attention had decreased.  Id.

A second report from Principato, dated March 19, 2016, stated that Stevenson had visited multiple emergency rooms and lost two prior jobs due to her anxiety.  R. 403.  The report notes that Stevenson's anxiety symptoms had worsened, especially over the last two years, and that her capacity to function had diminished significantly.  R. 403.  According to the report, Stevenson was unable to travel, except for short distances, and relied heavily on her parents and children to complete errands and chores.  R. 404.  The report states that Stevenson's concentration and attention had continued to decrease, and that while Stevenson had been receiving treatment from Principato for thirteen years at the time of the second report, her illness was causing "a steady decline."  Id.  The report acknowledged that while Stevenson did not have any history of inpatient psychiatric hospitalization and had no psychological testing, she did have persistent and chronic suicidal ideations.  R. 403-04.  According to Principato, Stevenson was "trying desperately to get back to work," but was unable to follow through, despite having tried "many times."  R. 404.

The report further noted that Stevenson's panic disorder and anxiety inhibited her ability to complete chores or caretaking tasks for her two children.  R. 404.  According to the report, Stevenson's husband has worked three jobs to support Stevenson and their family.  Id.  The report also indicates that Stevenson frequently cancelled appointments due to her condition, including dentist appointments, which has led to her requiring extensive dental surgery.  Id.  Although Stevenson's stress levels make it difficult to maintain a routine, the report noted that Stevenson had continued to visit Principato on a weekly or bi-weekly basis.  Id.  Despite the various treatments Stevenson received, and the multiple medications she had been prescribed, Principato found Stevenson's prognosis to be "poor."  Id.

In addition to the treatment records from Principato, Outpatient Hospital Records, the ALJ also had Disability Determination Explanations provided by Dr. Michael Maliszewski and Dr. S. Fischer, both of whom assessed Stevenson's claim initially and on appeal.  R. 82-86, 88-94.  Both assessments, dated December 21, 2015 and May 4, 2016, concluded there was no medical evidence from an acceptable medical source to support Stevenson's claim for disability.  R. 85, 92.

### 2.   *May 16, 2017 ALJ Hearing Before Remand*

At the May 16, 2017 administrative hearing before remand, Stevenson, James Conway, a vocational expert ("VE"), and two other witnesses, Karen Stevenson, Stevenson's mother and Robert Herman, Stevenson's husband, testified.  R. 35-79.  Stevenson testified that she worked as an account manager with Boston Financial from 1986 to 2004.  R. 40.  During that time, she managed a team of eight to eighteen people.  R. 41-42.  She left that job in 2004 and has not worked since that time.  R. 43.  Stevenson further testified that from at least December 31, 2009 until the time of the hearing, she has not been able to do any other job on a full time basis because of her medical conditions, which include extreme tiredness, depression, headaches, anxiety and panic attacks that resulted in emergency room visits.  R. 43-46.  Although Stevenson inquired with her previous employer whether it was possible to work part time, the company was unable to employ her in that capacity.  R. 44.

Stevenson's mother testified that Stevenson has struggled with anxiety from the time she was a child.  R. 57-58.  She also testified that Stevenson was first diagnosed with anxiety in the fifth grade and that her symptoms continued into adulthood, exacerbated by Stevenson's brain surgery.  R. 57-65.

Stevenson's husband attested to the difficulties Stevenson has experienced post-surgery, including panic attacks and a heightened anxiety that inhibits her from performing small tasks and

functioning in social situations.  R. 66-67.  He recalled an instance in which while he was at work one evening, Stevenson experienced a panic attack at their home and their son left the house to get help from a neighbor who is a nurse practitioner.  R. 67-68.  He further noted that prior to the surgery, Stevenson had been taking courses at a local university to make herself a better employee for her previous employer.  R. 71-72.  He believes the surgery "robbed" Stevenson of the ability to continue working in the field.  R. 72.

The VE testified that Stevenson's job as an account technician was a skilled job, Specific Vocational Preparation ("SVP")[4] of 6, and that her role as a supervisor for accounting clerks was an SVP of 7.  R. 73.  The ALJ asked the VE whether a hypothetical person "in the age bracket of 40 to 49" who "has a high school education" and "can perform work at the light exertion level with only occasional climbing balancing, stooping, kneeling, crouching or crawling" could perform Stevenson's past work.  R. 73-74.  The VE determined that such a person could do Stevenson's past work. R. 74.  The ALJ then asked the VE whether that same hypothetical person, if unable to maintain concentration for a full eight-hour workday, such that the person would be off tasks for twenty to thirty  percent of the day and would miss work three days a month, would be able to perform Stevenson's prior work.  Id.  The VE determined that those limitations were "too severe" and that such a person could not perform Stevenson's prior work.  Id.  Furthermore, the VE explained that such a person likely could not perform any other work, as being unproductive for twenty percent of the day equates to missing one full workday a week.  Id.  The VE further explained that considering the approximately three days expected to be missed per

---

[4] The SVP rating is used as a guideline "for determining how long it would take a claimant to achieve average performance in a job."  POMS § DI 25001.001(A)(77).

month, totaling two months of work missed a year, this would be "unacceptable to employers" and there would be no work available for such individual.  Id.

### 3.   June 20, 2017 Findings of the ALJ Before Remand

Following the five-step sequential evaluation process, at step one, the ALJ found that Stevenson had not engaged in substantial gainful activity since August 4, 2004, the alleged onset date.  R. 102.  At step two, the ALJ found that Stevenson has the "severe" impairment of anxiety with agoraphobia.  Id.  At step three, the ALJ determined that Stevenson did not have an impairment or combination of impairments that meets or medically equates to the severity of one of the impairments or combination of impairments in the listing.  Id.  At step four, the ALJ assessed Stevenson's RFC.  At this step, the ALJ determined that Stevenson had the RFC to perform light work but would be unable to maintain concentration over an eight-hour workday, would be off task for twenty to thirty percent of the day and would miss three or more workdays a month.  R. 103-04.  Accordingly, the ALJ determined that, with this RFC, Stevenson was unable to perform her past relevant work.  Id.  At step five, based upon her RFC, education, work experience and age, the ALJ determined that Stevenson's acquired job skills would not transfer to another occupation.  Id.  Accordingly, the ALJ concluded that Stevenson was disabled under the Social Security Act since August 4, 2004.  R. 106.

### 4.   June 7, 2018 ALJ Hearing After Remand

Upon remand from the Appeals Council, the ALJ held a further hearing.  R. 25.  At the rehearing, the ALJ heard from Stevenson and her attorney.  Stevenson testified that she did not have records from her primary care physician ("PCP") to support her claims, because the PCP only made the referral to Principato, but it was Principato, the APRN, who treated her and prescribed the medications at issue and that Principato was licensed to do so.  R. 26.  Although the rules did

not accept evidence from a wider variety of sources until March 2017, Stevenson's attorney argued to the ALJ that prior to the rule change, it was common practice for patients to receive therapy from someone other than a medical doctor and that the Council's knowledge of that fact led to the evolution of the rules.  R. 27-28, 30.  In light of this argument, the ALJ granted Stevenson's attorney time to obtain letter from Stevenson's PCP that might "cosign" on the treatment provided by Principato.  R. 32-33.  In response, Stevenson's attorney provided a detailed log, prepared by Principato, of Stevenson's symptoms during her monthly visits from 2003 to 2018, R. 454-57, D. 10 at 9, as well as Stevenson's medical records dating back to August 2004, authorized by Stevenson's PCP, Dr. Michelle Chabot, R. 494-537.  The medical records from Dr. Chabot reflected Stevenson's self-reports of anxiety, but did not contain a diagnosis of same.  R. 494-95 (Outpatient Hospital Record by Dr. Chabot, dated April 14, 2004, noting that Stevenson mentioned "she has quite a bit of anxiety," but articulating inclination to not diagnose Stevenson as having "strict panic attacks" until other pathologies have been "ruled out"); R. 515 (Outpatient Hospital Record by Dr. Chabot, dated May 1, 2007 (noting that Stevenson "becomes quite anxious" when she has a burning sensation from gastroesophageal reflux disease); R. 528 (Outpatient Hospital Record by Dr. Chabot, dated August 12, 2009, noting that Xanax's ability to control Stevenson's "symptoms of panic attacks" "essentially confirm[s] [Principato's] diagnosis").  As to Stevenson's counsel's proffer of a letter from her PCP, Dr. Chabot  provided a letter, dated June 8, 2018, in which she noted that "according to Donna Principato, Ms. Stevenson is unable to maintain a position of employment due to her severe anxiety," and that she is "in agreement with the opinion of Donna Principato that the patient has been disabled since 2004."  R. 463.

5.      *September 4, 2018 ALJ Findings After Remand*

On remand, the ALJ found that Stevenson has not engaged in substantial gainful activity from August 4, 2004 through her date last insured of December 31, 2009.  R. 15.  The ALJ also found there were no medical signs or laboratory findings that established the existence of a medically determinable impairment.  Id.  In making this decision, the ALJ gave "great weight" to the assessments made by Drs. Maliszewski and Fischer, who found that there was "no psychiatric medical record evidence by an acceptable medical source during the relevant period" and thus that Stevenson had failed to establish a medically determinable impairment prior to the date last insured.  R. 16.  The ALJ gave "less weight" to other evidence of Stevenson's impairments, such as the additional medical records and treatment proof provided by Principato, "as [Principato] is not an acceptable medical source under the applicable rules," R. 17, nor did the ALJ give weight to the records offered by Dr. Chabot, as Dr. Chabot "did not and does not treat [Stevenson] for her mental impairments," "did not prescribe medication" to Stevenson, and "deferred treatment of [Stevenson's] anxiety" to Principato.  Id.  The ALJ held that Dr. Chabot's letter could not establish the existence of a medically determinable mental impairment prior to the date last insured, because there was no evidence Dr. Chabot independently identified any sign or laboratory finding of a mental impairment during her treatment of Stevenson.  R. 17.

As to the Appeal Council's directions on remand, the ALJ complied with the Council's first instruction to obtain additional evidence concerning Stevenson's impairments as discussed above.  As to the Appeal Council's further instruction to obtain testimony from a medical expert regarding the nature and severity of Stevenson's impairments on or before the date last insured, R. 111, the ALJ did not do so explaining that any such testimony "could not supply the signs or laboratory findings necessary to establish a medical determinable impairment" on or before the

date last insured.  R. 17.  Since the ALJ concluded the five-step analysis at step two, that Stevenson

did not have a medically determinable impairment through the date last insured, the ALJ did not

reach further steps or the Appeals Council's further instructions regarding those steps.  See R. 17.

Accordingly, the ALJ determined that Stevenson was not disabled under the SSA at any time from

August 4, 2004 through December 31, 2009.  Id.

> 6.      *May 8, 2019 Appeals Council Review of Decision*

Stevenson petitioned the Appeals Council for a review of the ALJ's decision.  R. 269.  The

Council denied her request on May 8, 2019, upholding the ALJ's decision.  R. 1.    Accordingly,

the ALJ's decision of September 4, 2018 is the final decision of the Commissioner.  R. 1.

Stevenson now seeks judicial review of that decision.  D. 1.

### C.    Stevenson's Challenges to the ALJ's Findings

Stevenson contends that the Court should reverse the ALJ's decision, or, alternatively,

remand it  for further proceedings.  D. 10 at 10.  Stevenson argues that the ALJ erred by (1) not

following the directive of the Appeals Council and requirements of SSRs 83-20 and 18-01p to

consult a medical expert and (2) wrongfully placing controlling weight on the lack of "acceptable"

medical evidence and not considering other sources of evidence, including non-medical sources

as provided by SSR 18-01p.  D. 10 at 5.

> 1.      *The ALJ Did Not Err in Failing to Consult a Medical Expert for the*
> *Purposes of Determining Stevenson's Disability Onset Date*

Stevenson argues that, in determining her disability onset date, which is  the "the first day

an individual is disabled as defined in the [Social Security] Act and the regulations," SSR 83-20

(S.S.A. 1983), the ALJ erred by failing to heed the directive of the Appeals Council, which

instructed the ALJ to consult a medical expert.  D. 10 at 8.

a)      SSR 83-20's Medical Expert Requirement

Stevenson makes several arguments regarding SSR 18-01p, which discusses the purpose

of the Established Onset Date ("EOD") in disability claims and clarifies how the SSA determines

that date.  SSR 18-01p, 2018 WL 4945639, at *1-2 (Oct. 2, 2018).  However, SSR 18-01p only

applies to claims that were pending on and after October 2, 2018.  Id. at *7.  Because the ALJ

decided Stevenson's claim on September 4, 2018, SSR 83-20 applies.  Id. at *1; see, e.g., Gour v.

Saul, No. 3:18-cv-30155-KAR, 2020 WL 429450, at *13 (D. Mass. Jan. 27, 2020).  SSR 83-20

states that "the administrative law judge (ALJ) should call on the services of a medical advisor

when onset must be inferred."  SSR 83-20, 1983 WL 31249, at *2 (S.S.A. 1983).  SSR 83-20

furthers that "[i]f reasonable inferences about the progression of the impairment cannot be made

on the basis of the evidence in file and additional relevant medical evidence is not

available…[i]nformation may be obtained from family members, friends, and former employers

to ascertain why medical evidence is not available for the pertinent period and to furnish additional

evidence regarding the course of the individual's condition."  Id.

SSR 83-20's stated purpose is "to state the policy and describe the relevant evidence to be

considered when establishing the onset date of disability under the provisions of titles II and XVI

of the Social Security Act."  Id. at *1.  The ALJ's decision here, however, did not turn upon

establishing an EOD, for which such information as that listed in SSR 83-20 may be permissible

and a medical advisor required, but rather to whether Stevenson was in fact disabled under the

Social Security Act.  R. 17.  While there appears to be a split on this issue, Mazonson v. Colvin,

No. 15-CV-12979-ADB, 2016 WL 6776280, at *8 (D. Mass. Nov. 15, 2016) (citing Fischer v.

Colvin, 831 F.3d 31, 38 (1st Cir. 2016)) (acknowledging that there is "'no uniform approach" in

the First Circuit about whether a medical expert is required when no disability has been found), a

number of courts in this district have found SSR 83-20's requirement of "call[ing] a medical expert to determine the disability onset date" only applies when an ALJ finds that the claimant is disabled. See, e.g., Silverio v. Astrue, No. 10-cv-40202-FDS, 2012 WL 996857, at *6 (D. Mass. Mar. 21, 2012) (noting that "an ALJ is not required to consider SSR 83-20 unless the ALJ first finds that the claimant was disabled at some point prior to the date last insured")); McDonald v. Astrue, No. 10-cv-10896-DPW, 2011 WL 3562933, at *10 (D. Mass. Aug. 15, 2011) (noting that "if, as here, the ALJ finds that the claimant was not disabled during the relevant period, there is no requirement that the ALJ determine the onset date"); Biron v. Astrue, No. 09-40084-FDS, 2010 WL 3221950, at *6 (D. Mass. Aug. 13, 2010) (noting that "a determination concerning the onset of disability does not need to be made unless an individual has been determined at some point to have been disabled during the insured period").  It has been suggested that the ALJ should "consult a medical expert whenever the medical evidence regarding onset date is ambiguous, even if there has not been a finding of present disability.  See Joyce v. Berryhill, No. 16-11891-RGS, 2017 WL 4125254, at *12 (D. Mass. Sept. 18, 2017) (citing Fisher, 831 F.3d at 36-39; Mazonson, 2016 WL 6776280, at *8).  However, this is not such a case.

Medical evidence "is ambiguous where there is at least some evidence that would allow the ALJ to infer that the alleged onset date is accurate, but the claimant's medical records do not provide a precise onset date for [the] disability." Joyce, 2017 WL 4125254, at *12.  Here, the evidence provided by Principato provides an onset date for the disability, August 4, 2004.  D. 10 at 3.  There was no dispute as to this date nor is there any ambiguity requiring a medical expert's resolution.  Cf. Rossiter v. Astrue, No. 10-cv-349-JL, 2011 WL 2783997, at *7-8 (D.N.H. July 15, 2011) (finding that evidence regarding onset was such that a reasonable person could have decided either way and was therefore ambiguous such that a medical expert should have been called).  With

no ambiguity to resolve, even under this application of the SSA policy, there was no need to consult a medical expert pursuant to SSR 83-20 in the absence of an established disability.  See Joyce, 2017 WL 4125254, at *12.

b)      The Appeals Council's Directives

While the ALJ was not required to obtain a medical expert under SSR 83-20, in the Council's notice of remand, the Council instructed the ALJ, in relevant part, to "obtain additional evidence concerning [Stevenson's] impairments in order to reevaluate the nature and severity of any alleged impairments on or before the date last insured" and "obtain testimony from a medical expert, preferably from a psychiatrist or psychologist, to clarify the nature, severity [and] limiting effects of [Stevenson's] impairments."  R. 111.  In not doing the latter, the ALJ reasoned that such expert testimony would not provide the "signs or laboratory findings necessary to establish a medically determinable impairment on or before December 31, 2009."  R. 17.

Pursuant to 20 C.F.R. § 404.977(b), the ALJ, on remand, "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 404.977(b)); see, e.g., Boardway v. Berryhill, No. 3:17-cv-30069, 2018 WL 4323823, at *16 (D. Mass. Sept. 10, 2018).  Where an ALJ has not taken action ordered by the Appeals Council, the claimant must still show that such action resulted in prejudice for it to warrant reversal or remand.  Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citing American Airlines, Inc. v. Dep't of Transp., 202 F.3d 788, 797 (5th Cir. 2000) (declining to remand where appellant failed to show that error in administrative proceeding was harmful)) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

17

Under SSR 16-3p, the SSA "must have objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms."  SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017).  The SSA's list of acceptable medical sources, as provided in 20 C.F.R. § 404.1502(a), now includes "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (only with respect to claims filed (see § 404.614) on or after March 27, 2017)." 20 C.F.R. § 404.1502(a)(7).  The SSA "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 416.921.  "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  Id.

Here, even if the ALJ had obtained medical expert testimony,[5] according to Stevenson, the experts would have been able to "offer[  ] opinions as to the onset date of claimant's disability based upon all the available evidence of record…"  D. 10 at 9.  Such evidence, however, would not have established Stevenson's disability.  As noted in the ALJ's findings, Stevenson's "treatment history for her alleged mental impairment was exclusively with [Principato]."  R. 15-16.  Stevenson's claim was filed in 2015.  D. 10 at 6.  Under 20 C.F.R. § 404.1502(a)(7), Principato's records are not acceptable medical sources for claims predating March 27, 2017, and as such, cannot be used to establish a physical or mental impairment.  20 C.F.R. § 416.921; see, e.g., See Johnson v. Colvin, 204 F. Supp. 3d 396, 410 (D. Mass. 2016) (holding that the registered nurse clinical specialist was not among the "acceptable medical sources" listed in 20 C.F.R. §

---

[5] It appears that the ALJ made preliminary arrangements to obtain testimony from two medical experts, R. 427-53, 458-62, prior to making his determination that such testimony was unnecessary.

416.913(d) and that as an "other" medical source, the specialist's opinions were "not entitled to controlling weight").

With respect to the letter and reports by Stevenson's PCP, Dr. Chabot, it was within the ALJ's discretion to give little weight to these documents, given that "Dr. Chabot did not and does not treat the claimant for her mental impairments," "Dr. Chabot did not prescribe medication," to Stevenson and Dr. Chabot "deferred treatment of [Stevenson's] anxiety to [ ] Principato." R. 17. The opinion of a treating physician is entitled to "controlling weight with respect to the 'nature and severity' of the claimant's impairments where the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the record." Maldonado v. Berryhill, No. 18-11255, 2019 WL 4921538 at *22-23 (D. Mass. Sept. 4, 2019) (quoting 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2)). Here, Dr. Chabot's records and letter provide no basis in clinical and laboratory diagnostic techniques and state that Dr. Chabot did not treat Stevenson's mental conditions. R. 463. Thus, the ALJ "reasonably gave little to no probative weight" to Dr. Chabot's letter and reports, as Dr. Chabot, unlike Principato, did not have a sufficient treating relationship with Stevenson as pertains to Stevenson's anxiety and agoraphobia. Maldonado, 2019 WL 4921538 at *23 (noting that "the signature of…an acceptable medical source under the regulations, does not transform the opinion signed by…an 'other' medical source per the regulations, into a treating source opinion").

Accordingly, even if the ALJ followed the Council's instruction, without more, Stevenson had not provided evidence from acceptable medical sources to establish a medically determinable impairment for the relevant time period. Thus, Stevenson has not sustained her burden of establishing that the ALJ's failure to comply resulted in harmful error requiring reversal or remand. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (citation omitted) (noting that

"[w]hile an error of law by the ALJ may necessitate a remand . . . a remand is not essential if it will amount to no more than an empty exercise").

### 2.  The ALJ Placed Adequate Weight on the Lack of Acceptable Medical Evidence

Stevenson argues that the ALJ incorrectly based his denial of her claim on the "lack of 'acceptable' medical evidence . . . when SSRs 83-20 and 18-01p also provide for the consideration of all available and relevant evidence . . . where precise, or 'acceptable' medical evidence is unavailable." D. 10 at 5.  Stevenson cites several cases to support this point, though none are from this Circuit.  See Likes v. Callahan, 112 F.3d 189, 191 (5th Cir. 1997); Agnese v. Chafer, 934 F. Supp. 59, 62 (E.D.N.Y. 1996); Thomas v. Chater, 933 F. Supp. 1271, 1271 (D.V.I.), amended, 945 F. Supp. 104 (D.V.I. 1996).  Even if this Court found these cases otherwise persuasive, in contrast to the case at hand, each case involved evidence from a medically acceptable source.  See Likes, 112 F.3d at 191 (accepting diagnoses conducted by three mental health professionals in 1991 who found claimant's PTSD symptoms had been present since 1968); Agnese, 934 F. Supp. at 62 (accepting diagnosis from a medically acceptable source who found claimant suffered from a panic disorder with agoraphobia dating back to 1972, although not treated until 1987); Thomas, 933 F. Supp. at 1277 (addressing medical reports from physician who rendered an opinion as to claimant's condition "nearly six years *after* plaintiff's insured status expired").

Here, by contrast, no diagnoses from acceptable medical sources were ever presented as evidence to the ALJ.  The letter submitted to the ALJ on Stevenson's behalf from Dr. Chabot, a source that would satisfy medical evidence rules, does not attest to any diagnosis conducted by Dr. Chabot, but rather, restates Principato's findings.  D. 463 (noting that "according to Donna Principato, Ms. Stevenson is unable to maintain a position of employment due to her severe anxiety").  In one of Stevenson's cited cases, Agnese, although the physician found in 1987 that

the claimant had suffered from a disorder dating back to 1972, the court considered that the diagnosis was based upon the physician's weekly treatments and personal assessments of the claimant's symptomology.  Agnese, 934 F. Supp. at 62.  Conversely, here, Stevenson did not present a "properly corroborated retrospective medical diagnoses" from an accepted medical source to the ALJ.  D. 10 at 8.  Rather, the only evidence provided to the ALJ from a medically acceptable source was Dr. Chabot's letter, which does not state the diagnosis of someone who treated Stevenson or assessed her symptomology or provided medical evidence of same.  R. 463.

While Stevenson asserts SSR 83-20 allows for the consideration of additional information from family, friends and former employers that does not contradict the available medical evidence, D. 10 at 7, per SSR 83-20, such is accepted as a tool for "ascertain[ing] why medical evidence is not available and to furnish additional evidence regarding the course of the individual's condition." SSR 83-20, 1983 WL 31249, at *3.  These sources cannot establish the existence of a medically determinable impairment.  20 C.F.R. § 404.1521 (noting that impairments must "be shown by medically acceptable clinical and laboratory diagnostic techniques," established by "objective medical evidence from an acceptable medical source").  Accordingly, the ALJ placed adequate weight on the lack of acceptable medical evidence to establish Stevenson's disability.

## V.    Conclusion

Based on the foregoing, the Court ALLOWS the Commissioner's motion to affirm, D. 14, and DENIES Stevenson's motion to reverse and remand, D. 10.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge